IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                No. CR 22-0298 JB

GREGORY YAZZIE,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** comes before the Court on: (i) the Defendant Gregory Yazzie's Objections to the Presentence Investigative Report, filed July 29, 2025 (Doc. 264)("Objections"); and (ii) the United States of America's Motion for Enhancement for Reckless Endangerment During Flight, filed August 6, 2025 (Doc. 267)("Motion"). The sentencing is scheduled for February 23, 2026. The primary issues are: (i) whether the Court should overrule Defendant G. Yazzie's Objections regarding the United States Probation Office's Presentence Investigation Report ¶ 26, at 10, filed January 28, 2025 (Doc. 234)("PSR"), because the PSR states that G. Yazzie points a gun at the victims during the commission of the crime; (ii) whether the PSR correctly applies a 2-level enhancement under § 2B3.1(b)(4)(B), because G. Yazzie physically restrains the victims to facilitate the commission of the offense of robbery; (iii) whether the Court should overrule G. Yazzie's Objections regarding the PSR ¶¶ 16-17, at 7, because of G. Yazzie's contention that he was not involved in a high-speed chase with co-Defendant Amber Yazzie; (iv) whether the Court should grant the United States' Motion for a 2-level enhancement under § 3C1.2, because G. Yazzie shot at officers while fleeing on December 6, 2021; and (v) whether the Court will accept the United States' withdrawal of its recommendation for reduction for acceptance of

responsibility, because G. Yazzie's commission of new crimes post-Plea Agreement. The Court: (i) sustains Yazzie's Objection to PSR ¶ 26, at 10, because G. Yazzie does not point a gun at the victim during the commission of the crime; (ii) concludes that the PSR correctly applies a 2-level enhancement under § 2B3.1(b)(4)(B), because G. Yazzie and A. Yazzie use the threat of force to restrain the victims; (iii) overrules G. Yazzie's Objection to PSR ¶¶ 16-17, at 7, because the United States has shown -- by a preponderance of the evidence -- that G. Yazzie is involved in a high speed chase with A. Yazzie; (iv) grants the United States' Motion for a 2-level enhancement under § 3C1.2, because the United States has shown -- by a preponderance of the evidence -- that G. Yazzie shot at police officers while fleeing their pursuit; and (v) the Court will accept the United States' withdrawal of its recommendation for reduction for acceptance of responsibility, because G. Yazzie does not fulfill his promises under the plea agreement by committing new crimes post-Plea Agreement. The applicable offense level is 24, the applicable criminal history category is I, and the United States Sentencing Guidelines establish an imprisonment range of 51-63 months before the term of imprisonment on Count 3 is imposed. After imposing the Count 3 term of imprisonment, the guideline range is 111-123 months.

## FACTUAL BACKGROUND

G. Yazzie does not object to the PSR facts except those in ¶¶ 16, 17, 26, at 7, 10. See Objections at 1-3. Those undisputed facts are the Court's findings of fact. See Fed. R. Crim. P. 32(i)(3)(A) ("[The court] may accept any undisputed portion of the presentence report as a finding of fact."). Regarding PSR ¶ 26, at 10, the Court sustains Yazzie's objection and incorporates his finding of fact. Regarding PSR ¶¶ 16, 17, at 7, the Court concludes that the United States has shown -- by a preponderance of the evidence -- that the allegations in those paragraphs are true. The Court therefore includes the allegations in PSR ¶¶ 16, 17, at 7, in the Court's findings of fact.

When resolving factual objections, the Court must determine whether the United States has met its burden of proving disputed facts by a preponderance of the evidence. See United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008). In evaluating whether the United States has met its burden, "sentencing courts may consider hearsay evidence provided that the evidence has sufficient indicia of reliability." United States v. Dazey, 403 F.3d 1147, 1177 n.7 (10th Cir. 2005). See U.S.S.G. § 6A1.3.[1] "This is not a high standard, for it requires only 'minimal indicia of

---

[1] Although a district court "resolving any dispute concerning a factor important to the sentencing determination . . . may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy," U.S.S.G. § 6A1.3, the federal rules of evidence can be relevant to fact-finding at sentencing. In United States v. Calvert-Cata, No. CR 16-4566 JB, 2022 WL 14813473, at *12 (D.N.M. October 26, 2022)(Browning, J.), aff'd, No. 23-2000, 2024 WL 33901 (10th Cir. January 3, 2024), the Court holds, in a revocation context, that it may consider and rely upon out-of-court statements if those statements are admissible under the Federal Rules of Evidence and under Crawford v. Washington, 541 U.S. 36 (2004)("Crawford"), without evaluating separately those statements' reliability. See United States v. Calvert-Cata, 2022 WL 14813473, at *12. The Court reasons that, "because evidentiary standards for revocation hearings are supposed to be more inclusive and flexible than trials," it "makes no sense to require the United States to" clear hurdles that are not there at trial. Calvert-Cata, 2022 WL 14813473, at *12.

Here, the Court concludes that the same principles apply and that, in a sentencing context, it may consider and rely upon out-of-court statements that are admissible under the Federal Rules of Evidence without evaluating separately those statements' reliability. Like revocation hearings, sentencing hearings are supposed to have more inclusive and flexible evidentiary standards than trials. For example, at sentencing, district courts use a preponderance of the evidence standard to resolve factual disputes and apply sentencing enhancements. See United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008); United States v. Magallanez, 408 F.3d 672, 685 (10th Cir. 2005). Similarly, a district court may "revoke supervised release after concluding that the defendant violated a condition of probation by a preponderance of the evidence." United States v. Hykes, 653 F. Supp. 3d 913, 926 (D.N.M. 2022)(Browning, J.)(citing 18 U.S.C. § 3583(e)). Also, a district court may consider, for both sentencing and revocation, out-of-court statements that are not admissible at trial. See U.S.S.G. § 6A1.3; Fed. R. Crim. P. 32.1(b)(2)(C). Moreover, the standard for considering an out-of-court statement at sentencing is higher than the standard for considering an out-of-court statement at revocation. At sentencing, a district court need only determine that the statement has "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3. See United States v. Dazey, 403 F.3d 1147, 1177 n.7 (10th Cir. 2005). At revocation, a district court must weigh the statement's reliability and the defendant's interest in cross-examination against the United States' explanation for not presenting a witness. See United States v. Jones, 818 F.3d 1091, 1099-1100 (10th Cir. 2016); United States v. Murphy, 769 F. App'x 631, 633-34 (10th Cir. 2019). Given that it is easier to consider an inadmissible out-of-court

reliability.'" United States v. Ayon, 226 F. App'x 834, 840 (10th Cir. 2007)(unpublished)(quoting United States v. Fennell, 65 F.3d 812, 813 (10th Cir. 1995)).

On December 4, 2021, G. Yazzie walked into C&R Insurance with Defendant Chadyne Tohe and his sister Amber Yazzie. See 2nd Presentence Investigation Report at 6, filed August 28, 2025 (Doc. 271)("2nd PSR"). The trio each assumed defined roles. A. Yazzie's role is intimidation: she demands everyone show his or her hands and get on the ground before firing a shot into the ceiling while yelling, "hands up, put your fucking hands up, give your fucking money, give me your money." 2nd PSR at 6. Tohe's role is straightforward; he collects the money from the register while A. Yazzie scares the staff. See 2nd PSR at 6. G. Yazzie, meanwhile, is the lookout, positioning himself at the front door with a firearm, ensuring that no one flees while his accomplices perform their tasks. See 2nd PSR at 7. This ultimately led to a loss of $4,044.00 for C&R. See 2nd PSR at 6.

---

statement at sentencing, it makes sense to apply the Court's reasoning in United States v. Calvert-Cata to sentencing; if the Court can consider admissible out-of-court statements at revocation without evaluating separately whether those statements are reliable, then the Court can do the same at sentencing, where the evidentiary hurdle is lower.

United States v. Murphy is an unpublished opinion, but the Court can rely on an unpublished United States Court of Appeals for the Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit states:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that United States v. Murphy, and United States v. Ayon, 226 F. App'x 834 (10th Cir. 2007), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

On December 6, 2021, police receive a call from an unknown female reporting that A. Yazzie -- wanted for robbery and murder -- is leaving her residence in a black four-door vehicle. See 2nd PSR ¶ 16, at 7. Minutes later, officers locate the vehicle and attempt a traffic stop, but the vehicle does not yield. See 2nd PSR ¶ 17, at 7. The vehicle runs a traffic light and speeds away at roughly eighty miles per hour, without headlights. See 2nd PSR ¶ 17, at 7. When the headlights are eventually turned on, the vehicle begins traveling the wrong way at speeds exceeding 100 miles per hour. See 2nd PSR ¶ 17, at 7. During the chase, officers observe passengers throwing objects from the vehicle and hear gunshots fired from the passenger side. See 2nd PSR ¶ 17, at 7. The pursuit leads to a nearby residence, but officers are unable to locate the occupants or to detect movement inside. See 2nd PSR ¶ 17, at 7. They confirm, however, that shots had been fired, as the vehicle recovered at the scene has bullet holes on the passenger side. See 2nd PSR ¶ 17, at 7. Later interviews confirm that G. Yazzie is one of the passengers during the high-speed chase and actively fires at pursuing officers. See 2nd PSR ¶ 27, at 10.

G. Yazzie was not apprehended until December 10, 2021. See 2nd PSR ¶ 18, at 8. That day, officers spot a brown van and attempt to initiate a traffic stop, but the vehicle immediately fled. See 2nd PSR ¶ 18, at 8. The van speeds recklessly, weaving across lanes and blatantly disregarding traffic laws. See 2nd PSR ¶ 18, at 8. Officers deploy stop sticks, which deflates the right front and rear tires, slowing the vehicle. See 2nd PSR ¶ 18, at 8. The van eventually loses control on a dirt road, crashing into a fence near a residence. See 2nd PSR ¶ 18, at 8. Upon stopping, the driver and a passenger flee on foot. See 2nd PSR ¶ 18, at 8. The passenger -- later identified as G. Yazzie -- is quickly apprehended after attempting to escape through a nearby property's back door. See 2nd PSR ¶19, at 8.

Appearing to have learned little from his prior encounters with law enforcement, G. Yazzie continues to engage in criminal conduct while in confinement for the underlying offenses. On February 5, 2024, during a strip search in the shower area, officers recover a sharpened instrument in G. Yazzie's possession. See Second Addendum at 1, filed March 3, 2025 (Doc. 248). Less than a month later, on March 4, 2024, G. Yazzie assaults an inmate, who is transported to Cibola General Hospital for stitches to his lip. See Second Addendum at 1. On November 8, 2024, G. Yazzie refuses to return to his cell, citing concerns for his personal safety. See Second Addendum at 1. Investigation reveals that G. Yazzie, together with three other inmates, has been assigned to act as "protectors" for another inmate and has coordinated a plan to prevent security officers from removing him. Second Addendum at 1. The pattern continues on December 31, 2024, when a cell search uncovers a homemade puncture weapon; both G. Yazzie and his cellmate are disciplined. See Motion at Ex. 1. On April 2, 2025, another search reveals a sharpened piece of metal in his waistband, resulting in his placement in restrictive housing. See Motion at Ex. 2. Taken together, these repeated actions paint a clear portrait of a person unwilling to abide by rules, indifferent to authority, and unconcerned with the safety of those around him.

## PROCEDURAL BACKGROUND

On June 28, 2022, a Superseding Indictment was filed in the United States District Court for the District of New Mexico, charging the defendants as follows:

> Count 1: Amber Yazzie, **Gregory Yazzie**, Randy Joe, and Chadyne Tohe, with Interference with Interstate Commerce by Robbery and Violence; Aiding and Abetting. The offense occurred on or about December 4, 2021, in McKinley County.
>
> Count 2: Amber Yazzie with Using and Carrying a Firearm During and in Relation to a Crime of Violence, and Possessing a Firearm in Furtherance of Such Crime; Discharging Said Firearm. The offense occurred on or about December 4, 2021, in McKinley County.

>    Count 3: **Gregory Yazzie** with Using and Carrying a Firearm During and in Relation to a Crime of Violence, and Possessing a Firearm in Furtherance of Such Crime. The offense occurred on or about December 4, 2021, in McKinley County.
>
>    Count 4: Amber Yazzie with Assault with a Dangerous Weapon. The offense occurred on or about December 6, 2021, in Indian Country, in McKinley County.
>
>    Count 5: Amber Yazzie with Using and Carrying a Firearm During and in Relation to a Crime of Violence, and Possessing a Firearm in Furtherance of Such Crime; Discharging Said Firearm. The offense occurred on or about December 6, 2021, in McKinley County.

See 2nd PSR ¶ 1, at 4 (bold in 2nd PSR). On December 4, 2024, G. Yazzie pleads guilty to Counts 1 and 3 of the five-count Superseding Indictment. See 2nd PSR ¶ 2, at 4.

>    Count 1 charged Interference with Interstate Commerce by Robbery; Aiding and Abetting, in violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 2; Count 3 charged Using and Carrying a Firearm During and in Relation to a Crime of Violence, and Possessing a Firearm in Furtherance of Such Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

See 2nd PSR ¶ 2, at 4.

On January 28, 2025, the United States Parole Office ("USPO") files the PSR, which applies a total offense level of 19. See PSR at 14. On July 29, 2025, G. Yazzie files the Objections, which raises three objections to the PSR. See Objections at 1-4. G. Yazzie's first Objection is that PSR ¶ 26, at 10, incorrectly states that G. Yazzie points a gun at the victims. See Objections at 1. He states that he never points a gun at anyone and that the statement in the PSR is contrary to the surveillance video. See Objections at 1. G. Yazzie's second Objection is that the USPO improperly applies a 2-level physical restraint enhancement under § 2B3.1(b)(4)(B). See Objections at 2. He argues that § 2B3.1(b)(4)(B) is inapplicable because it does not apply when threats rather than physical force hinder freedom of movement. See Objections at 2. G. Yazzie's third Objection is that PSR ¶¶ 16, 17, at 7, improperly includes information about a high-speed chase, because he denies any involvement in the chase. See Objections at 3.

On August 6, 2025, the United States files its Sealed United States' Sentencing Memorandum, Notice of Withdrawal of Acceptance of Responsibility, Response to Defendant's Objections to the PSR and Motion for Enhancement for Reckless Endangerment During Flight. See Motion at 1.  The United States first provides a notice of withdrawal of recommendation for reduction for acceptance of responsibility, because G. Yazzie's commission of new crimes while in Cibola County Correctional.  See Motion at 7.  The United States then argues that the § 3C1.2 reckless-endangerment-during-flight enhancement should apply, because Yazzie shot at officers during a high-speed chase on December 6, 2021.  See Motion at 10.  Regarding G. Yazzie's first objection, the United States does not oppose the objection, because it agrees that it is not clear that G. Yazzie points a gun at any of the victims.  See Motion at 15.  Regarding G. Yazzie's second Objection, the United States argues that the USPO properly applies a 2-level § 2B3.1(b)(4)(B) enhancement, because the physical restraint enhancement does not require touching the victim. See Motion at 15.  Regarding G. Yazzie's third Objection, the United States argues that the information regarding the high-speed chase is relevant conduct, because G. Yazzie participated in the chase. See Motion at 16.

On August 11, 2025, the USPO responds to the Objections.  See Third Addendum to the Presentence Report at 1, filed August 11, 2025 (Doc. 268)("Third Addendum").  Regarding G. Yazzie's first Objection, the USPO does not oppose the Objection, because it is not clear that G. Yazzie points a gun at any of the victims. See Third Addendum at 1.  Regarding G. Yazzie's second Objection, the USPO maintains that the § 2B3.1(b)(4)(B) enhancement applies, because G. Yazzie used the threat of force to restrain the victims.  See Third Addendum at 3.  Regarding G. Yazzie's third Objection, the USPO maintains that the information regarding the high-speed chase in PSR ¶¶ 16, 17, at 10, is relevant conduct, because evidence shows G. Yazzie participates in the chase.

See Motion at 16. Regarding the United States' request for a § 3C1.2 reckless-endangerment enhancement, the USPO contends that there is a preponderance of evidence to support the assertion that G. Yazzie participates in the high-speed chase.

## ANALYSIS

The Court sustains in part and overrules in part the Objections, and grants the United States' Motion. First, the Court sustains G. Yazzie's first Objection to PSR ¶ 26, at 10, because the evidence does not show that he points a gun at any of the victims. Second, the Court overrules G. Yazzie's second Objection to the § 2B3.1(b)(4)(B) enhancement, because G. Yazzie uses the threat of force to restrain the victims. Third, the Court overrules G. Yazzie's third Objection to PSR ¶¶ 16, 17, at 7, because the United States has shown -- by a preponderance of the evidence -- that G. Yazzie participates in the high-speed chase. Fourth, the Court grants the United States' Motion for a § 3C1.2 reckless-endangerment enhancement, because, again, the United States shows -- by a preponderance of the evidence -- that G. Yazzie participates in the high-speed chase. Fifth, the Court will not give G. Yazzie a reduction for acceptance of responsibility, because he has committed several new crimes while at Cibola County Correctional.

**I.    THE COURT SUSTAINS G. YAZZIE'S OBJECTION TO PSR ¶¶ 16, 17, AT 7.**

The Court concludes that PSR ¶ 26, at 10, does not describe accurately G. Yazzie's actions in the underlying offense. The pertinent language states: "The participants restrained the victims' freedom of movement with the threat of injury by Amber Yazzie and Gregory Yazzie pointing guns at them." PSR ¶ 26, at 10. G. Yazzie argues that this language is incorrect, because he "never pointed a gun at anyone, and the statement is contrary to the surveillance video and is also inconsistent with Jane Doe's statement . . . ." Objections at 1. Both the United States and the USPO agree that G. Yazzie does not point a gun at any victim. The Court therefore sustains G. Yazzie's Objection. This ruling has no bearing on G. Yazzie's offense level.

## II. G. YAZZIE'S BASE LEVEL OFFENSE IS SUBJECT TO A 2-LEVEL PHYSICAL RESTRAINT ENHANCEMENT INCREASE PURSUANT TO U.S.S.G. § 2B3.1(B)(4)(B).

The Court concludes that the Physical Restraint Enhancement applies, because G. Yazzie and his co-conspirators use the threat of force to restrain their victims. G. Yazzie contends that the enhancement is not appropriate, because § 2B3.1(b)(4)(B)'s commentary defines "physically restrained" as "the forcible restraint of the victim such as being tied, bound, or locked up." See Objections at 2. This argument fails, because § 2B3.1(b)(4)(B) also applies when the restraint results from the threat of force.[2] For purposes of this enhancement, "physical restraint is not limited to physical touching of the victim. Rather, physical restraint occurs whenever a victim is specifically prevented at gunpoint from moving, thereby facilitating the crime. *Keeping someone from doing something is inherent within the concept of restraint* . . . ." United States v. Miera, 539 F.3d 1232, 1234 (10th Cir. 2008)(emphasis in original)("Miera").

Something more is required, however, than merely possessing or brandishing a firearm. Miera, 539 F.3d at 1234. For example, in Miera, robbers yelled at bank patrons not to move while waving guns -- conduct that "kept the bank occupants from even considering escape." 539 F.3d at 1234. The Tenth Circuit holds the enhancement proper, because the robbers' commands and display of weapons effectively restrain everyone present. See Miera, 539 F.3d at 1235.

Likewise, G. Yazzie stands at C&R's exit with a gun while A. Yazzie orders employees and patrons to raise their hands at gunpoint. See PSR ¶ 14, at 6; See id. ¶ 12, at 6. Taken together,

---

[2] The newest amendment -- effective November 1, 2025 -- to § 2B3.1(b)(4)(B) clarifies that the enhancement applies when a robbery victim's movement is restricted at gunpoint, even if the victim is not immobilized in the manner described in the definition of "physically restrained" in Application Note 1 to § 1B1.1. Amendment 832 to U.S.S.G. § 2B3.1(b)(4)(B)("Amendment 832"). The Sentencing Commission accomplished this by revising the text from "if any person was physically restrained" to "if any person's freedom of movement was restricted through physical contact or confinement, such as by being tied, bound, or locked up." Amendment 832.

these actions physically restrain everyone inside the store. The Court therefore concludes that the 2-level Physical Restraint Enhancement applies.

### III. THE UNITED STATES SHOWS -- BY A PREPONDERANCE OF THE EVIDENCE -- THAT G. YAZZIE PARTICIPATES IN THE HIGH-SPEED CHASE.

The Court concludes that the United States proves, by a preponderance of the evidence, that G. Yazzie participates in the high-speed chase on December 6, 2021. G. Yazzie argues that the Court should strike PSR ¶¶ 16, 17, at 10, because he is not involved in the incident the PSR describes. Those paragraphs state:

> On December 6, 2021, MCSO deputies were dispatched to a call from an unknown female stating Amber Yazzie, who was wanted for robbery and murder, was outside her residence. The unknown female reported Amber Yazzie was leaving the area in a black four door vehicle but was not able to provide additional information on the vehicle. Minutes later, GPD officers located a black four door vehicle travelling west on New Mexico State Highway 602, mile marker 26, in Gallup, New Mexico. The vehicle was bearing New Mexico license plate APDM38. The vehicle was registered to Randy Joe who was a known family member of Amber Yazzie with an address in Vanderwagen, New Mexico.
>
> The vehicle failed to stop at a traffic light, and officers followed the vehicle which began travelling 80 miles per hour (mph) with no headlamps. The vehicle eventually turned on its headlamps and began travelling the wrong way at over 100 mph. The vehicle turned off its headlamps and continued to turn its headlights on and off, traveling the wrong way, and traveling at high rates of speed. Officers observed the passengers of the vehicle throwing items out of the window. Officers reported they heard three gunshots and later heard additional shots being fired and orange flashes from the passenger side of the vehicle while following the vehicle. Officers slowed down but followed the vehicle tracks to a residence in Vanderwagen, New Mexico. The vehicle, a gray Chevrolet Malibu, was located behind the residence. Officers were not able to locate the passengers of the vehicle, and they did not observe movement inside the residence. NPD officers arrived on scene and advised that no crime had been committed in their jurisdiction, and they were departing from the scene. GPD and MCSO were instructed by their command to leave the scene.

PSR ¶¶ 16, 17, at 10. Several facts support the conclusion that G. Yazzie participates in the chase. First, pursuing officers hear gunshots and see muzzle flashes from the fleeing vehicle's passenger side. See Motion at 11. Second, co-Defendant Joe -- who admits driving the vehicle -- tells officers

that G. Yazzie is in the passenger seat.  See Motion at 11.  Third, Joe states that G. Yazzie fires at law enforcement during the pursuit.  See Motion at 11.  Fourth, co-Defendant Tohe also confirms that G. Yazzie is in the vehicle and shooting at officers.  See Motion at 11.  Taken together, this evidence establishes, by a preponderance of the evidence, that G. Yazzie participates in the December 6, 2021, high-speed chase.  The Court therefore overrules G. Yazzie's Objection to ¶¶ 16, 17, at 10.

### IV. G. YAZZIE'S BASE LEVEL ENHANCEMENT IS SUBJECT TO A 2-LEVEL RECKLESS-ENDANGERMENT-DURING-FLIGHT ENHANCEMENT PURSUANT TO U.S.S.G. § 3C1.2.

The Court concludes that G. Yazzie's base offense level is subject to a 2-level increase under § 3C1.2, because G. Yazzie shoots at law enforcement while fleeing on December 6, 2021. A 2-level enhancement applies under § 3C1.2 "if the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer."  U.S.S.G. § 3C1.2.  "Not every flight from a crime scene, of course, will constitute reckless endangerment under § 3C1.2. There are situations in which a defendant might flee from law enforcement officers in a manner that does not recklessly endanger others."  United States v. Conley, 131 F.3d 1387, 1390 (10th Cir. 1997).  As the Court notes previously, "the 'Tenth Circuit's precedent indicates that the most common cases where courts apply the guidelines involve high-speed car chases.'"  United States v. Fichera, No. CR 17-1369 JB, 2018 WL 5924391, at *3 (D.N.M. Nov. 14, 2018)(Browning, J.)(quoting United States v. Bush, 2012 WL 394572, at *8). See United States v. Gray, 512 F. App'x 803, 807 (10th Cir. 2013)(collecting cases).

 For example, in United States v. Porter, 643 F. App'x 758 (10th Cir. 2016), the Tenth Circuit affirms the district court's application of §3C1.2 where the defendant flees a traffic stop "and led the officer on a short pursuit, committing several traffic violations and ultimately crashing into a residential garage."  643 F. App'x at 760.  As discussed above, the United States proves by a

preponderance of the evidence that G. Yazzie is in the car during the high-speed chase on December 6, 2021. The vehicle reaches speeds exceeding 100 miles per hour, often driving without headlights and in the wrong lane. See Motion at 10-11; See PSR ¶ 17, at 7. In his attempt to evade capture, G. Yazzie fires multiple rounds at pursuing officers from the passenger seat. See Motion at 10; See PSR ¶ 17, at 7. This conduct is not merely reckless; it epitomizes the life-endangering behavior that § 3C1.2 is designed to punish. The Court therefore grants the United States' Motion and applies a 2-level reckless endangerment enhancement under § 3C1.2.

## V.  G. YAZZIE'S BASE LEVEL ENHANCEMENT IS NOT SUBJECT TO A 3-LEVEL ACCEPTANCE OF RESPONSIBILITY REDUCTION.

The Court concludes that G. Yazzie's base offense level is not subject to a 3-level acceptance of responsibility reduction, because he has committed new crimes following his Plea Agreement. The Court must determine if G. Yazzie is entitled to a 2-level reduction pursuant to § 3E1.1(a); if he is not entitled to the 2-level reduction, the Court must deny the 1-level reduction under § 3E1.1(b). This is because a defendant may receive the additional 1-level decrease only if he first qualifies under § 3E1.1(a).

As a preliminary matter, the United States may withdraw its recommendation for a reduction for acceptance of responsibility. General principles of contract law govern Plea agreements. United States v. Guzman, 318 F.3d 1191, 1195 (10th Cir. 2003). If a defendant fails to fulfill his promises under the plea agreement, the United States is released from its obligations under the agreement. United States v. Ailsworth, 927 F. Supp. 1438, 1445 (D. Kan. 1996)(Crow, J.). The Plea Agreement, filed December 2, 2024 (Doc. 222)("Plea Agreement"), provides: "The Defendant agrees not to engage in conduct that would constitute a new crime." Plea Agreement ¶ 17, at 9. It further states: "The Defendant agrees that if the Court finds by a preponderance of the

evidence that the Defendant has violated any provision of this agreement, the United States will be released from its obligations under the agreement." Plea Agreement ¶ 32, at 12.

The United States shows, by a preponderance of the evidence, that G. Yazzie violates these terms. On December 31, 2024 -- less than a month after entering into the Plea Agreement -- correctional officers find in G. Yazzie's possession a puncture weapon made from a fence tie, approximately 8 inches in length. See Motion at 7. On April 2, 2025, during a search preceding his placement in Restrictive Housing, officers find in G. Yazzie's waistband a sharpened piece of metal, fashioned from a chain-link wire with a homemade cloth handle and measuring roughly six and a half inches. See Motion at 8. The Court therefore allows the United States to withdraw its recommendation for a reduction for acceptance of responsibility.

The question then becomes whether G. Yazzie remains entitled to the 2-level reduction under § 3E1.1(a). "[W]hether a defendant has accepted responsibility is a factual question" for the Court to decide. United States v. Lozano, 514 F.3d 1130, 1133 (10th Cir. 2008). In determining whether a defendant qualifies under subsection (a), relevant factors include, but are not limited to: (i) truthfully admitting the conduct comprising the offense of conviction; (ii) voluntary termination or withdrawal from criminal conduct or associations; and (iii) post-offense rehabilitative efforts. U.S.S.G. § 3E1.1 Application Note 1.

Although G. Yazzie enters into his Plea Agreement admitting his offense, the totality of his conduct since then demonstrates no genuine acceptance of responsibility. He has not voluntarily ceased criminal behavior, nor has he made any rehabilitative efforts. As the Court notes, officers find two separate weapons in his possession -- one in December, 2024, and another in April, 2025 -- each fashioned for use as a stabbing instrument. See Motion at 7-8. His misconduct extends even further back in time, occurring after the underlying offense but before he enters into the plea

agreement. On February 5, 2024, officers recover a sharpened instrument from G. Yazzie during a strip search in the shower area. See Second Addendum to the Presentence Report at 1, filed March 3, 2025 (Doc. 248). Less than a month later, on March 4, 2024, G. Yazzie assaults another inmate, who requires stitches to his lip. See Second Addendum to the Presentence Report at 1. On November 8, 2024, G. Yazzie refuses to return to his cell, citing safety concerns, but investigation reveals that he and three other inmates are acting as "protectors" for another inmate, and coordinated efforts to obstruct officers. Second Addendum to the Presentence Report at 1.

These are not the actions of a defendant who has renounced criminal conduct or accepted moral or legal responsibility for it. G. Yazzie's continued defiance -- marked by violence, weapon possession, and manipulation of correctional staff -- shows that his plea is a tactical decision and not a moral reckoning. The Court therefore concludes that a reduction for acceptance of responsibility is not appropriate, and the Court declines to apply any decrease under § 3E1.1. G. Yazzie's conduct consistently undermines his words of contrition, and the Guidelines do not reward remorse in name only.

**IT IS ORDERED** that: (i) the Defendant Gregory Yazzie's Objections to the Presentence Investigative Report, filed July 29, 2025 (Doc. 264)("Objections"), are sustained in part and overruled in part; (ii) the United States' Motion for Enhancement for Reckless Endangerment During Flight, filed August 6, 2025 (Doc. 267)("Motion"), is granted; (iii) the 2-level U.S.S.G. § 2B3.1(B)(4)(B) enhancement applies; (iv) the 3-level § 3E1.1 reduction does not apply; (v) the applicable offense level is 24; (vi) the applicable criminal history category is I; (vii) the United States Sentencing Guidelines establish an imprisonment range of 51-63 months before the term of imprisonment on Count 3 is imposed; and (viii) the imprisonment range is 111-123 months after imposing the Count 3 term of imprisonment.

                                                                                         _____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Ryan Ellison
  United States Attorney
Nicholas James Marshall
Jesse Pecoraro
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Gregory M. Acton
Acton Law Office PC
Albuquerque, New Mexico

    *Attorney for the Defendant*